[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14693
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00007-LGW-JEG


JASON RAY WEAVER,

Plaintiff-Appellant,

versus

PACCAR, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(June 11, 2015)

Before MARCUS, WILSON, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Jason Weaver (Weaver) appeals from the district court's order granting summary judgment to Defendant-Appellee PACCAR, Inc. (PACCAR).  On December 23, 2011, Weaver, then a diesel mechanic at Wall Timber Products, Inc. in Georgia, was permanently injured when a model-year 2004 Kenworth T800 semi-truck that he was inspecting rolled over his leg.  The semi-truck was manufactured by PACCAR.  Weaver filed suit against PACCAR in district court, alleging that PACCAR's failure to install a "neutral safety switch" on the semi-truck was the proximate cause of the accident and PACCAR was thus strictly liable under Georgia's products liability statute for his injuries.[1]  On PACCAR's motion for summary judgment, the district court found that PACCAR's design of the semi-truck did not proximately cause Weaver's injuries and granted PACCAR's motion on that ground.  Weaver appealed.[2]

Proximate cause is a necessary element of a products liability action.  *See Talley v. City Tank Corp.*, 279 S.E.2d 264, 269 (Ga. Ct. App. 1981); *Carmical v. Bell Helicopter Textron, Inc., a Subsidiary of Textron, Inc.*, 117 F.3d 490, 494 (11th Cir. 1997) (citing O.C.G.A. § 51-1-11(b)(1)) ("To prevail in a Georgia

---

[1] A "neutral safety switch" prevents a truck from starting when the transmission is not in neutral.  The function of the switch is to prevent unintended movement of the vehicle when starting the engine.  The neutral safety switch does not come standard on PACCAR's vehicles, but it is "offered . . . as an option."  PACCAR's witnesses testified below that a majority of purchasers of PACCAR's vehicles do not exercise that option.

[2] We review a district court's grant of summary judgment de novo, applying the same legal standards as those applied by the district court below.  *See Thrasher v. State Farm Fire & Cas. Co.*, 734 F.2d 637, 638–39 (11th Cir. 1984) (per curiam).

2

products liability action . . . a plaintiff must show that the proximate cause of the injury was a defect which existed when the product was sold."). "Under Georgia law 'proximate cause' is not the last act or cause, or the nearest act to the injury. It is the negligent act that actively aids in producing the injury as a direct and existing cause." *Cain v. Vontz*, 703 F.2d 1279, 1282 (11th Cir. 1983). The initial actor is not always the "direct and existing cause." *Id.*

Where, for example, "an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's acts, and which was sufficient of itself to cause the injury," is interposed between the original negligent act and the plaintiff's injury, there can be no proximate cause. *Walker v. Giles*, 624 S.E.2d 191, 200 (Ga. Ct. App. 2005) (internal quotation marks omitted). An act is "foreseeable" when it is reasonably expected to occur, "not merely what might occur." *Jonas v. Isuzu Motors, Ltd.*, 210 F. Supp. 2d 1373, 1377 (M.D. Ga. 2002). Thus, when a manufacturer "reasonably could have anticipated or foreseen the intervening act and its consequences, . . . the intervening act of negligence will not relieve [the manufacturer] from liability for the consequences resulting [therefrom]." *Lindsey v. Navistar Int'l Transp. Corp.*, 150 F.3d 1307, 1317 (11th Cir. 1998) (internal quotation marks omitted).

3

Here, the proximate causal connection between PACCAR's design of the T800 sans neutral safety switch and Weaver's injuries is missing. The facts relevant to Weaver's injuries are not in dispute: PACCAR manufactures the T800 and offers the neutral safety switch as an optional feature; the semi-truck at issue here did not have a neutral safety switch; a truck driver, Chris Manning, brought the semi-truck to Wall Timber for service and, while Weaver was working underneath the semi-truck, Manning absent-mindedly cranked the semi-truck, causing it to lurch forward and crush Weaver's leg. Manning's conduct was an intervening act between PACCAR's allegedly negligent decision to manufacture a truck on which a neutral safety switch did not come standard and Weaver's injuries. Manning cranked the truck, either at the direction of mechanics at Wall Timber or on his own volition, knowing it was in gear and would thus lurch forward, and the parties do not dispute that he acted negligently in doing so. Manning's conduct was sufficiently independent of PACCAR's original allegedly negligent act and was sufficient itself to cause Weaver's injuries. *See Walker*, 624 S.E.2d at 200.

We further agree that Manning's actions and the resulting consequences were not foreseeable to PACCAR. *See id.* PACCAR reasonably expected that the operator of a T800 semi-truck would be trained in operating large trucks with manual transmissions, would possess a valid Commercial Driver's License to

4

operate the semi-truck, and would operate the semi-truck in accordance with the rules and procedures attendant to that license.  Indeed, Manning was an experienced, trained semi-truck driver, and he appreciated the risk of cranking the T800 semi-truck while it was in gear with the parking break disengaged; still, despite his knowledge and training, he cranked the truck when he "wasn't thinking."  As noted by the district court, "Defendant-manufacturers may be expected to foresee negligence born of ignorance, but they are not expected to foresee negligence from distraction, inattentiveness, or absent-mindedness."  Here, Manning's negligence was born of absent-mindedness, not ignorance.  PACCAR could not have reasonably foreseen or anticipated that an experienced, trained driver like Manning would abjectly fail to follow protocol in starting one of its semi-trucks.  *See Lindsey*, 150 F.3d at 1317.

Even if an alleged design defect in the T800 semi-truck left it prone to lurching, unforeseeable operator error and negligence was the proximate cause of the accident and Weaver's resulting injuries.  *See, e.g.*, *Jonas*, 210 F. Supp. 2d at 1378–80.  Because Weaver cannot show that PACCAR's design was the proximate cause of his injuries, we affirm the district court's order granting summary judgment to PACCAR.[3]  *See id.* at 1377 ("No matter how negligent a party may

---

[3]  Because we agree with the district court that PACCAR's design of the semi-truck sans "neutral safety switch" was not the proximate cause of Weaver's injuries, we need not address whether the semi-truck was, in fact, defective.

be, if their act stands in no causal relation to the injury it is not actionable."); *see also Talley*, 279 S.E.2d at 269; *Carmical*, 117 F.3d at 494.

**AFFIRMED.**